**Appellants' Motion for Rehearing Granted in Part and Overruled in Part; Memorandum Opinion of September 15, 2011 Withdrawn; Affirmed as Modified and Substitute Memorandum Opinion filed December 8, 2011.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-09-00924-CV

**SHARON SWANK BACKHUS, BENJAMIN F. SWANK, III, SHANNON LEA WERCHAN PICKERING, SWANK TURNER BACKHUS, BENJAMIN FONTAINE SWANK, IV, CHRISTIAN HARRIS SWANK, AND SUZANNE SWANK PORTER, Appellants**

**V.**

**HAVEN LYN WERCHAN WISNOSKI AND SHANE ALAN WERCHAN, Appellees**

**On Appeal from 506th District Court**
**Grimes County, Texas**
**Trial Court Cause No. 31,343**

## S U B S T I T U T E   M E M O R A N D U M   O P I N I O N

We grant in part and overrule in part appellants' motion for rehearing. We withdraw our opinion of September 15, 2011 and issue this substitute memorandum opinion.

Appellants, Sharon Swank Backhus, Benjamin F. Swank, III, Shannon Lea Werchan Pickering, Swank Turner Backhus, Benjamin Fontaine Swank, IV, Christian Harris Swank, and Suzanne Swank Porter, appeal a summary judgment in favor of appellees, Haven Lyn Werchan Wisnoski and Shane Alan Werchan, denying appellants' request for declaratory relief relative to an attempt to partition certain real property and reforming the partition deeds. We modify several portions of the judgment and affirm as modified.

## I. BACKGROUND

Appellants, Sharon Swank Backhus ("Backhus") and Benjamin F. Swank, III ("Swank"), were grandchildren of E.W. Harris ("Harris"), now deceased. Under Harris's will ("the will"), Backhus and Swank were each granted a one-half, undivided life estate in certain real property located in Grimes County, Texas. All parties agree that the will also provided for fee simple title to vest in the children of Backhus and Swank ("the remaindermen") after both life tenants have died. Backhus and Swank collectively have seven children.

In 2006, Backhus and Swank each executed and filed in the Grimes County records a "Partition Deed" attempting to partition the property into two relatively equal parts. The deeds were worded such that each life tenant and his or her "heirs, personal representatives, successors, and assigns" would hold title to the life tenant's portion of the partitioned property. Backhus and Swank requested their respective children to ratify the partition deeds. All children agreed except Haven Lyn Werchan Wisnoski and Shane Alan Werchan (collectively "appellees"), who are both children of Backhus.

Backhus, Swank, and the five children who agreed to the partition (collectively "appellants") sued appellees, seeking a declaratory judgment that the partition was authorized under the will and was valid, enforceable, and binding on all remaindermen. The trial court denied this relief. The First Court of Appeals affirmed, holding (1) the partition was invalid because the life tenants purported to partition fee simple title but Texas law precludes holders of life estates from partitioning property to grant higher

2

estates than they own, and (2) partition binding on the remaindermen was not authorized under the will. *See Backhus v. Wisnoski*, No. 01-07-00041-CV, 2008 WL 660013, at *3–5 (Tex. App.—Houston [1st Dist.] Mar. 13, 2008, pet. denied) (mem. op.) ("*Backhus I*"). The Supreme Court of Texas denied appellants' petition for review.

In August 2008, Backhus and Swank again attempted the partition by each executing and filing in the Grimes County records another document entitled, "Partition Deed of Undivided Life Estates." This time, the parties purported to partition only life estates rather than fee simple title, but, as we will further discuss, the deeds were again worded such that the partition purportedly bound the remaindermen. Appellees also refused to ratify these deeds.

Appellants again sued appellees, seeking a declaratory judgment that the partition is authorized under the will and is valid, enforceable, and binding on all remaindermen. Appellees filed a motion for summary judgment on the grounds that appellants' request is barred under the doctrines of res judicata and collateral estoppel based on disposition of their earlier suit. Appellees do not oppose partition to the extent it would affect only the life estates of Backhus and Swank but resist their attempt to make the partition binding on the remaindermen. Appellants filed their own motion for summary judgment asserting they are entitled to the requested declarations.

After hearing arguments on the cross motions, the trial court expressed its opinion that the partition deeds were "over-reaching." However, before signing an order, the court gave appellants the opportunity to amend their petition to request reformation of the deeds so that they could at least effect a valid partition of their life estates. Appellants did amend their petition to add such a request for reformation as an alternative form of relief. On September 18, 2009, the trial court signed a judgment denying appellants' request for declaratory relief but reforming all sections of the deeds.

## II. STANDARD OF REVIEW

We review declaratory judgments under the same standards as other judgments and decrees. *Lidawi v. Progressive Cnty. Mut. Ins. Co.*, 112 S.W.3d 725, 730 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *see* Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (West 2008). We consider the procedure used to resolve the issue in the trial court to determine the standard of review on appeal. *Lidawi*, 112 S.W.3d at 730. When a trial court resolves a declaratory-judgment action via summary judgment, we review the judgment under the same standards applied in reviewing a summary judgment. *See id.*

A party moving for traditional summary judgment must establish there is no genuine issue of material fact and he is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). If the movant establishes his right to summary judgment, the burden shifts to the non-movant to raise a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). A plaintiff moving for summary judgment must conclusively prove all essential elements of his claim. *Cullins v. Foster*, 171 S.W.3d 521, 530 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986)). A defendant moving for summary judgment must conclusively negate at least one element of the plaintiff's theory of recovery or plead and conclusively establish each element of an affirmative defense. *Siegler*, 899 S.W.2d at 197.

We review a summary judgment *de novo*. *Knott*, 128 S.W.3d at 215. We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in his favor. *Id.* When, as in this case, both parties move for summary judgment and the trial court grants one motion and denies the other, we must review both parties' summary-judgment evidence, determine all issues presented, and render the judgment that the trial court should have rendered. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

4

In their first, second, fourth, and fifth stated issues, appellants contend the trial court erred by reforming respectively the Consideration, Habendum, Property, and Reservations from Conveyance sections in each partition deed. In their third issue, appellants contend the trial court erred by denying their request for a declaratory judgment that partition binding on the remaindermen is authorized under the will.

Because the deeds drafted by the life tenants, Backhus and Swank, purported to bind the remaindermen, the court's reformation thereof reflects its refusal to declare that the deeds were valid, the partition is binding on the remaindermen, and partition binding on the remaindermen is authorized under the will. Therefore, appellants' issues essentially encompass a challenge to the trial court's refusal to render the requested declarations. Additionally, appellants apparently challenge some aspects of the trial court's reformation even to the extent that the reformed deeds partition only the life estates.

**A.     Request for Declaration on Binding Effect of Partition**

Appellants requested that the trial court render four declarations. We will first address the court's denial of appellants' request for the following declaration:

> That the voluntary partition made by [Backhus] and [Swank] is valid and binding on all parties;

We will later address the specific language used in the partition deeds and the court's reformation thereof. However, relative to the above-cited request, appellants apparently sought declarations that their partition was valid despite purporting to bind the remaindermen and that generally a partition of life estates is binding on remaindermen.

In their motion for summary judgment, appellees contended that all appellants' requests for declaratory relief were barred by the doctrine of res judicata or the doctrine of collateral estoppel. The doctrine of res judicata "prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Barr v. Resolution Trust*

5

*Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). A party relying on this doctrine must prove there is (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a second action based on the same claims that were, or could have been, raised in the first action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

The doctrine of collateral estoppel prevents relitigation of particular *issues* already resolved in a prior suit. *Barr*, 837 S.W.2d at 628–29. A party relying on this doctrine must prove (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action, (2) those facts were essential to the judgment in the first action, and (3) the parties were cast as adversaries in the first action. *Sysco Food Servs. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994).

We conclude that neither doctrine is applicable to appellants' request for the above-quoted declaration. The original partition deeds addressed in *Backhus I* were different than the second drafts presently under review. *See* 2008 WL 660013, at *4. The *Backhus I* court upheld the trial court's refusal to declare the original deeds were valid because the life tenants attempted to effect a partition that would grant each other fee simple title rather than only a partition of life estates. *See id.* Because there was no valid partition of life estates in the first place, the *Backhus I* court did not directly adjudicate any claim or issue regarding validity of the language used in the *Backhus I* deeds purporting to bind the remaindermen or whether a partition of life estates is generally binding on remaindermen. *See id.* at *1–5.

Nevertheless, we conclude the trial court did not err in the present case by refusing to render the above-quoted declaration. As the *Backhus I* court recognized, common owners of land may voluntarily effect a partition, which segregates their possession and use, including life estates. *Id.* at *3 (citing *Houston Oil Co. v. Kirkindall*, 136 Tex. 103, 109, 145 S.W.2d 1074, 1077 (1941); *Bunting v. McConnell*, 545 S.W.2d 30, 31 (Tex. Civ. App.—Houston [1st Dist.] 1976, no writ); *Morris v.. Morris,* 99 S.W. 872, 874 (Tex. Civ. App.—Galveston 1907, no writ)). Further, a joint owner or claimant of real property

or an interest in real property may compel a partition of the interest or the property among the joint owners or claimants. Tex. Prop. Code Ann. § 23.001 (West 2000); *see Backhus I*, 2008 WL 660013, at *3 n.1 (citing section 23.001). However, "[a] partition of real property involving an owner of a life estate or an estate for years and other owners of equal or greater estate does not prejudice the rights of an owner of a reversion or remainder interest." Tex. Prop. Code Ann. § 23.003 (West 2000); *see Backhus I*, 2008 WL 660013, at *3 (citing section 23.003 although not directly addressing whether partition of life estates is generally binding on remaindermen). A declaration that the deeds presently under review were valid despite purporting to bind the remaindermen or that a partition of life estates is generally binding on remaindermen would prejudice appellees' right to fee simple title in the whole after the death of the last life tenant.

Appellants cite the principle that remainderman may not invalidate a valid partition. Indeed, a remainder interest is not a possessory interest during the term of the life estate. *See State v. Beeson*, 232 S.W.3d 265, 277 (Tex. App.—Eastland 2007, pet. dism'd); *Bradley v. Bradley*, 540 S.W.2d 504, 515 (Tex. Civ. App.—Fort Worth 1976, no writ). An owner of a nonpossessory interest can neither compel nor defeat partition and is not a necessary party to a partition suit because his title is not affected by partition. *Dierschke v. Central Nat. Branch of First Nat. Bank at Lubbock*, 876 S.W.2d 377, 380 (Tex. App.—Austin 1994, no writ) (citing *Tex. Oil & Gas Corp. v. Ostrom*, 638 S.W.2d 231, 233–34 (Tex. App.—Tyler 1982, writ ref'd n.r.e.); *Douglas v. Butcher*, 272 S.W.2d 553, 555 (Tex. Civ. App.—San Antonio 1954, writ ref'd n.r.e.)).

This authority is distinguishable because the remaindermen are not attempting to invalidate partition of the life estates; they do not oppose this partition. However, the gist of appellants' request for relief is not a declaration that the partition is binding on the remaindermen during the term of the life estates. Indeed, appellants do not need such a declaration to effect a valid partition of only the life estates because the remaindermen cannot invalidate it. *See id.* Rather, appellants seek a declaration that the partition is binding on the remaindermen when they do gain a possessory interest and fee simple title

7

after the death of the last life tenant.  For instance, in his affidavit supporting appellants' motion for summary judgment, Swank averred:

> [Appellees] have made it known to us that they will not recognize the validity of our Partition Deeds and would seek to set aside or rescind our partition after our deaths. We therefore seek a final judicial determination that our Partition Deeds executed in 2008 are valid and binding on all of the remaindermen.

However, appellants cite no authority supporting their request for a declaration which would operate contrary to the principle that the life tenants' partition does not prejudice the rights of the remaindermen.

## B.    Request for Declaration that Partition Was Authorized Under the Will

The trial court also denied appellants' request for the following declarations:

> That [the will] especially recognized the right of partition to [Backhus] and [Swank], the life tenants;

> That by the express provisions of [the will], the partition is expressly binding on all parties;

In this instance, we do agree with appellees that appellants' request was barred by the doctrine of res judicata.

With respect to the first element of the doctrine, *Backhus I* involved a final judgment on the merits by a court of competent jurisdiction because the case was finally resolved when the Texas Supreme denied appellants' petition for review.  The second element is satisfied because the parties are the same in *Backhus I* and the present case. *See generally Backhus I*, 2008 WL 660013.

Relative to the third element, as we have discussed, the *Backhus I* court addressed different deeds than those presently under review and did not directly reach the issue of whether a valid partition of life estates would bind the remaindermen.  *See id.* at *1–5. However, in *Backhus I*, appellants also requested a declaratory judgment that the life tenants were authorized under the will to effect a partition binding on all remaindermen, *see id.* at *1, 3, 4,  which is identical to the above-quoted request for declaratory

8

judgment in the present case.

In *Backhus I*, appellants presented the same argument advanced in the present case: the "Twentieth" paragraph of the will authorized partition. *See id.* at *3, 4–5. This paragraph provides in pertinent part,

> It is my further will, and I do direct, that should the said Sharon Swank [Backhus] or B.F. Swank, III, as the case may be, be survived by an heir of the body, then said surviving heir (or heirs) of said pre-deceased child, or the heirs of the body then living of such-predeceased child, shall take and hold the same interest as would have gone to the parent under and by virtue of any paragraph hereinbefore mentioned, said surviving child, or the heir, or heirs as the case may be, of the body of any pre-deceased child, thereupon the death of said last surviving child of the said Ida Mae Cunningham Swank as survives me to have and to take the fee simple title thereto said lands and premises, share and share alike and per stirpes, pending which event (that is the death of said last surviving child of said Ida Mae Cunningham Swank as survives me) they shall have the use and benefit of said lands and premises in proportion to their respective interest and with the right hereby especially granted of partition thereof said lands and premises of said respective interest, which partition I direct shall be binding upon any and all persons as may take hereunder this will or through any party to such partition.[1]

The *Backhus I* court held that the portion of this provision granting the right to effect a partition binding on all "all persons as may take hereunder this will" applied only if Backhus or Swank predeceased Harris, the testator. *See id.* at *5. Under such circumstances, the surviving children of the predeceased Backhus or Swank would hold the same interest to which the predeceased would have been entitled (i.e., his or her life estate) and these children would have the right to effect a partition binding on any beneficiaries under the will. *See id.* Therefore, this provision is inapplicable because neither Backhus nor Swank predeceased Harris. *Id.* Accordingly, the *Backhus I* court held that the will did not authorize any partition beyond the right to partition life estates generally recognized under Texas law. *See id.*

Appellants seem to acknowledge the *Backhus I* holding but nonetheless attempt to

---

[1] Ida Mae Cunningham Swank was the mother of Backhus and Swank.

circumvent it.  However, appellants do not address the doctrine of res judicata, much less advance any reason that it is inapplicable in the present case.  Instead, appellants merely reiterate their substantive arguments that partition is allegedly authorized under the will.

In sum, although *Backhus I* and the present case involved different partition deeds, appellants' request for a declaratory judgment that partition binding on the remaindermen is authorized under the will was fully adjudicated in *Backhus I*.  Accordingly, the doctrine of res judicata precludes appellants from relitigating the request in the present case.

## C.    Request for Declaration On Validity of the Deeds and Reformation

Each partition deed drafted by Backhus and Swank contained sections entitled "Consideration," "Property," "Reservations from Conveyance," and "Exceptions to Conveyance and Warranty" and two untitled sections that were essentially "Habendum" provisions effecting partition of the property as well as strips or gores.  The trial court refused to render the following requested declaration:  "That the Partition Deeds . . . executed . . . by [Backhus] and [Swank] . . . are valid and enforceable."  However, as requested in appellants' amended petition, the court reformed all sections of the deeds to purportedly effect a partition of only the life estates.  The court also made some modifications with respect to sections of the deeds governing oil, gas, and mineral interests that are unrelated to whether the life tenants were attempting to partition only the life estates.  Appellants challenge the reformation except relative to the Exceptions to Conveyance and Warranty section.[2]  We conclude the trial court did not err by refusing to render the requested declaration because, as discussed below, the deeds drafted by Backhus and Swank purported to bind the remaindermen to the partition, and we will address the court's reformation of certain sections.

### 1.    Consideration and Habendum sections

Appellants' challenge to reformation of the Consideration and Habendum sections

---

[2] Although appellants do not challenge reformation of the Exceptions to Conveyance and Warranty section, we note that this section concerns restrictive covenants and easements.

10

partly entails construing these provisions together.

### *Consideration sections*

Each deed drafted by Backhus and Swank contained the following section reciting "Consideration" for the partition:

> TEN AND NO/IOO DOLLARS ($10.00) and other good and valuable consideration, and Grantor and Grantee bing [sic] each owners of a ½ undivided life estate interest in 2,622.5 acres of land in Grimes County, Texas, vested in them by the Last Will and Testament of E. W. Harris, Deceased, admitted to probate on November 12, 1962, under Cause No. 3636, County Court of Grimes County, Texas, and the agreement between Grantor and Grantee to partition their ½ undivided life estates into specific life estates in specific parts of the 2,622.5 acres of land, more or less, by Deed so as to effect by separate instruments of conveyance, a partition of said 2,622.5 acres of land in a manner *so that each of the Parties hereto, their heirs, personal representatives, successors and assigns, shall henceforth own and hold a life estate in the specific land which the parties have mutually agreed to partition to each other* with each party hereto conveying their undivided interest in the part set aside to the other and which is described in each of two Partition Deeds.

(emphasis added).

The trial court reformed the Consideration section in each deed to state,

> TEN AND NO/IOO DOLLARS ($10.00) and other good and valuable consideration; and the agreement between Grantor and Grantee, each being owners of an undivided life estate interest in 2,622.5 acres of land in Grimes County, Texas (said life estate being provided for by the Last Will and Testament of E. W. Harris, Deceased, admitted to probate on November 12, 1962, under Cause No. 3636, County Court of Grimes County, Texas), to partition their undivided life estate interests into separate life estates pertaining to specific parts of the 2,622.5 acres or [sic] land, more or less, as described herein, subject to the terms and conditions of the Last Will and Testament of E. W. Harris, Deceased, *so that Grantor and Grantee shall during the term of the life estates, hold a life estate in specific land and not jointly with one another.*

(emphasis added).

In sum, the court rephrased the initial language describing the interests granted the life tenants under the will. However, the material change was deletion of language

11

reciting the partition was effected so that both the life tenant and his or her "heirs, personal representatives, successors and assigns" would hold a life estate in the life tenant's portion of the partitioned property and substitution of language reciting the partition is effective between the life tenants "during the term of the life estates."

### *Habendum sections*

In the Habendum sections, the life tenants actually effect the partition: Backhus's deed conveys one portion of the property including strips or gores to Swank; likewise, Swank's deed conveys the other portion to Backhus. The Habendum section in each of their drafted deeds provided,

> Grantor, for the Consideration and subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee Grantor's life estate in the above described property, together with all and singular the rights and appurtenances thereto in any way belonging, *to have and to hold it to Grantee and Grantee's heirs, personal representatives, successors, and assigns forever. Grantor binds Grantor and Grantor's heirs, personal representatives, successors and assigns to warrant and forever defend all and singular the Property to Grantee and Grantee's heirs, personal representatives, successors, and assigns* against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty.

> Grantor, for the same Consideration and subject to the Reservations from Conveyance and Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee, without express or implied warranty, Grantor's life estate in, the strips or gores, if any, between the Property and abutting properties and land lying in or under any public thoroughfare, opened or proposed, abutting or adjacent to the Property, together with all and singular the rights and appurtenances thereto in any way belonging, *to have and to hold it to Grantee and Grantee's heirs, personal representatives, successors and assigns forever*. All warranties that might arise by common law as well as the warranties in section 5.023 of the Texas Property Code (or its successor) are excluded as to the property conveyed by this paragraph.

(emphasis added).

12

The trial court reformed the Habendum section in each deed to state,

> Grantor, for the Consideration and subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty, grants, sells and conveys to Grantee, Grantor's undivided interest in and to the life estate in the herein described property, together with all and singular the rights and appurtenances thereto in any way belonging, *to have and to hold it to Grantee for and during Grantee's natural life* as provided for by the terms and conditions of the Last Will and Testament of E. W. Harris, Deceased. *Grantor warrants and defends the Property to Grantee* against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty.

> Grantor, for the Consideration and subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty, grants, sells and conveys to Grantee, without express or implied warranty, Grantor's life estate rights, if any, in the strips and gores, if any, between the Property and abutting properties and land lying in or under any public thoroughfare, opened or proposed, abutting or adjacent to the Property, together with all and singular the rights and appurtenances thereto in any way belonging, *to have and to hold it to Grantee for and during Grantee's natural life* as provided for by the terms and conditions of the Last Will and Testament of E. W. Harris, Deceased. All warranties that might arise by common law as well as the warranties in Section 5.023 of the Texas Property Code (or its successor) are excluded as to the property conveyed by this paragraph.

(emphasis added).

In sum, the trial court essentially deleted language making conveyance of each portion of the partitioned property and strips and gores binding on both the Grantee and his or her "heirs, personal representatives, successors, and assigns" and binding the Grantor plus his or her "heirs, personal representatives, successors and assigns" to warrant and defend such conveyance. The court substituted language making the conveyance of each portion of the partitioned property and strips and gores binding on only the Grantee during his or her "natural life" and binding only the Grantor to warrant and defend such conveyance.

As we construe appellants' contentions, they included the "heirs, personal representatives, successors, and assigns" language in these sections to ensure the partition is binding on the remaindermen when they take fee simple title after the death of the second life tenant. Because we have concluded that the partition is not binding on the remaindermen after the death of the second life tenant, the trial court properly deleted such language and substituted language effecting a partition of only the life estates. Moreover, the language in the Consideration section of the attempted deeds could be construed as reciting that the remaindermen will hold only a life estate in the property—a disposition contrary to the fee simple title to which they are entitled under the will.

However, our analysis does not end here because appellants contend that the reformed Consideration and Habendum sections are conflicting regarding the termination date of the partition. After hearing arguments on the motions for summary judgment but before rendering judgment, the trial court inquired about the parties' positions on the status of the partition once the first life tenant dies; i.e., the status between the death of the first life tenant and the death of the last life tenant at which time fee simple vests in the remaindermen. Appellants responded that the deceased life tenant's heirs would have the right to possession of his or her portion of the partitioned property while the surviving life tenant would maintain possession of his or her portion of the partitioned property. In contrast, appellees responded that the surviving life tenant would gain possession of the entire property thus effectively ending the partition because fee simple title does not vest in the remaindermen until the death of the last life tenant.

Despite this inquiry, the trial court later remarked in further correspondence that the issue regarding status of the partition after the first life tenant's death was not before the court although the parties might be required to address the issue in the future. Appellants suggest that, despite this remark, the trial court implicitly rendered conflicting rulings on that issue in the reformed Consideration and Habendum sections.

Specifically, the reformed Habendum sections render the conveyance of each partitioned portion of the property effective "during Grantee's natural life," thus, in

14

essence, rendering the partition effective only until the first life tenant's death. However, the reformed Consideration sections recite that the life tenants are effecting the partition so that "Grantor and Grantee shall during the term of the life estates, hold a life estate in specific land and not jointly with one another." Appellants note that "life estates" in the plural includes both tenants' life estates; therefore, this language could be construed as reciting the partition continues until the death of the second life tenant and thus implicitly ruling that, upon the death of the first life tenant, his or her heirs gain a possessory interest in that life tenant's portion of the partitioned property until the death of the second life tenant. We disagree.

Construed in context, the trial court's use of the language, "during the term of the life estates" in the plural entails the time during which there are multiple life estates; i.e., while both life tenants are both living. Consequently, the trial court reformed the Consideration sections to essentially recite that the partition ends on the death of the first such life tenant, consistent with the Habendum paragraphs. However, even if the reformed Consideration sections could be construed as reciting that the partition ends on the death of the second life tenant, such ruling is necessarily moot; because there are only two life tenants, the partition necessarily ends on the death of the first life tenant.[3]

Accordingly, we uphold the trial court's reformation of the Consideration and Habendum sections of the deeds.

## 2.    Property sections

These sections contain descriptions of the property being partitioned. The first

___

[3] The issue of whether the partition may continue beyond the death of the first life tenant would not arise unless his or her heirs gained a possessory interest between the deaths of the life tenants. As the court suggested, the overarching issue of whether heirs gain any possessory interest upon the first life tenant's death was not before the court. The parties did not seek declaratory relief, much less move for summary judgment on that issue. We do not hold that the life tenants and/or their heirs are foreclosed from later attempting to obtain a ruling—whether by agreement or judicial relief—that, upon the death of the first life tenant, his or her heirs gain that life tenant's previous interest in the property until the death of the second life tenant and then attempting to effect a partition or perpetuate the present partition. However, that issue is not before the court in this case. Backhus and Swank requested reformation to effect at least a valid partition of their "undivided life estates," if the trial court would not declare that the partition is binding on the remaindermen after the death of the last life tenant.

paragraph of each Property section describes the portion of the property that Backhus and Swank respectively convey to each other. The trial court did not modify the first paragraph in either deed.

The second paragraph of the Property section in each deed drafted by Backhus and Swank was a provision conveying certain "executive rights" in the property as follows:

> Together with the executive rights; the power to execute any and all future leases for the development of said lands or any portion thereof, for oil, gas and other minerals, without the joinder of Grantor, or Grantor's heirs, personal representatives, successors and assigns, however, no lease executed by Grantee, Grantee's heirs, personal representatives, successor [sic] or assigns shall provide for a royalty of less than three sixteenths (3/16) of the value of oil, gas and other minerals covered by such lease(s).

In sum, the parties partitioned both the surface of the property and the power to execute oil, gas, and mineral leases subject to the proviso that each lease executed by a life tenant and his or her "heirs, personal representatives, successor [sic] or assigns" must command a certain minimum royalty.

The trial court ordered deletion of the second paragraph because "it is not in compliance with the terms and conditions" of the will and substituted the following paragraph:

> Grantee shall have the complete power without the joinder of any person to lease and let the property, including the right to execute and deliver oil, gas, and mineral leases for any term of years ending either before or after Grantee's death; and the right to possess and consume all bonuses, delay rentals, and other benefits payable under oil and gas leases covering the property.

The will contained a provision stating that relative to the property, "none of the lands shall be sold, nor encumbered, not the interest of any person entitled thereto under this will, sold, or encumbered, prior to the vesting of the fee simple title thereto . . . ." However, the will also prescribed several exceptions to the above-quoted provision including the following:

16

It is my further will and desire, and I so direct, that notwithstanding the limitations as to sale and/or encumbrance of the lands and premises . . ., I further grant unto such beneficiary the right, without joinder of anyone, to enter into oil, gas and other mineral leases upon such terms and conditions as such beneficiary deem proper as involves such tract of land to which such beneficiary be entitled to possession, he or she, as the case may be, retaining any bonuses, rentals and/or royalties payable under such lease, provided, however, no such oil, gas and/or mineral lease shall be entered into as provides for a primary term in excess of five years.

Appellants contend the life tenants were authorized under this provision to grant each other the exclusive right to execute oil, gas, and mineral leases in their respective portions of the partitioned property. The court obviously agreed because it left intact overall the life tenant's conveyance of such a right although it modified some aspects of their agreement.

The trial court's reformation included several material revisions. In particular, the court changed the language allowing the Grantee's execution of leases "without Joinder of Grantor, or Grantor's "heirs, personal representatives, successors and assigns" to "without the joinder of any person." However, this change actually gives the life tenants more protection than their drafted paragraphs and is consistent with their rights under the will. In fact, appellants do not specifically challenge this modification.

Instead, appellants focus on the trial court's deletion of the proviso that "no lease executed by Grantee, Grantee's heirs, personal representatives, successor [sic] or assigns shall provide for a royalty of less than three sixteenths (3/16) of the value of oil, gas and other minerals covered by such lease(s)." Appellants assert that this language was intended to mutually protect "both families."

As appellants emphasize, the will authorized each life tenant "to enter into oil, gas and other mineral leases upon such terms and conditions as such beneficiary deem proper as involves such tract of land to which such beneficiary be entitled to possession . . . ." Therefore, each life tenant is entitled to execute leases relative to his or her undivided life estate. Accordingly, it follows that the life tenants may agree that each is entitled to execute leases relative to his or her portion of the property when voluntary partitioned.

17

Because the life tenants' rights under the will include execution of leases "upon such terms and conditions as [he or she] deem[s] proper," they may also agree that each life tenant will require a minimum royalty in all leases executed relative to his or her portion of the partitioned property. Via such agreement, the life tenants are merely granting each other lesser rights in the partitioned property than they would otherwise possess under the will. Accordingly the trial court erred by deleting the proviso in its entirety.

However, the language making this proviso applicable to not only the Grantee but also "Grantee's heirs, personal representatives, successor [sic] or assigns" could be construed as binding the remaindermen to a requirement that leases they execute after taking fee simple title must command a minimum royalty. Accordingly, the trial court did not err by at least deleting the language binding "Grantee's heirs, personal representatives, successor [sic] or assigns" to the proviso.

Finally, the trial court added language to the Property section granting each life tenant relative to his or her portion of the partitioned property, "the right to possess and consume all bonuses, delay rentals, and other benefits payable under oil and gas leases covering the property." Appellants do not expressly challenge addition of this phrase. However, appellants implicitly challenge this addition by attacking the trial court's deletion of the Reservations from Conveyance section from the deeds. As shown below, the life tenants apparently intended for the partition to include the right to execute leases but not "the right to possess and consume all bonuses, delay rentals, and other benefits payable" under leases. Under the will, each life tenant is entitled to "retain[] any bonuses, rentals and/or royalties payable under" oil, gas, or mineral leases that he or she executes. Accordingly, we conclude the life tenants may exclude the right to retain payments realized from oil, gas, and mineral leases from their partition because they are again granting each other less rights than they otherwise would possess under the will.

In sum, we will modify the trial court's reformation of the second paragraph of the Property section to reinsert the language regarding minimum royalties in executed leases and delete the phrase pertaining to retention of payments from such leases.

18

### 3. Reservations from Conveyance section

Each partition deed drafted by the life tenants contained the following section entitled, "Reservations from Conveyance":

> *For Grantor and Grantor's heirs, personal representatives, successors and assigns forever* a reservation of all oil, gas and other minerals in and under and that may be produced from the Property. If the mineral estate is subject to existing production or an existing lease, this reservation includes the production, the lease, and all benefits from it.

(emphasis added). The trial court deleted this section in its entirety.

Appellants contend that the trial court erred by deleting this section because the parties intended to exclude oil, gas, and minerals from the partition so that both families share in production from the entire property. Appellees concede the life tenants have a life-estate interest in the oil, gas, and minerals. Accordingly, we conclude that the life tenants are permitted to exclude such interest from their partition because they are merely preserving a right they already possess under the will. However, we will order reformation of this section to delete the phrase, "and Grantor's heirs, personal representatives, successors and assigns forever" so that the reservation concerns only the life estates in the oil, gas, and mineral interests.

## IV. CONCLUSION

We overrule appellants' first, second, and third issues. We overrule, in part, and sustain, in part, their fourth and fifth issues.

We modify the trial court's reformation of the second paragraph of the Property section in both partition deeds to order that this section state as follows:

> Grantee shall have the complete power without the joinder of any person to lease and let the property, including the right to execute and deliver oil, gas, and mineral leases for any term of years ending either before or after Grantee's death; however, no lease executed by Grantee shall provide for a royalty of less than three sixteenths (3/16) of the value of oil, gas and other minerals covered by such lease(s).

We modify the trial court's reformation of the Reservations from Conveyance section in both partition deeds to reinstate the section but order that it state as follows:

> For Grantor, a reservation of all oil, gas and other minerals in and under and that may be produced from the Property. If the mineral estate is subject to existing production or an existing lease, this reservation includes the production, the lease, and all benefits from it.

We affirm the judgment as modified.


/s/    Charles W. Seymore
Justice


Panel consists of Justices Seymore, Boyce, and Christopher.